IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK J. FITZSIMMONS, M.D.,

      Plaintiff,

v.

                                        Civil Action No. **3:15cv72**

CARDIOLOGY ASSOCIATES OF
FREDERICKSBURG, LTD.,
RICHARD A. LEWIS, M.D.,
FRANK R. SNOW, M.D.,
GREGORY J. KAUFFMAN, M.D.,
SCOTT J. SEIDNER, M.D.,
ANH D. VU, M.D.,
and
ATIQUE PAPPA,

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Cardiology Associates of

Fredericksburg, Ltd.'s ("CAF") Motion to Dismiss the matter against it pursuant to Federal Rule

of Civil Procedure 12(b)(6)[1] and Defendants Richard A. Lewis, M.D., Frank R. Snow, M.D.,

Gregory J. Kauffman, M.D., Scott J. Seidner, M.D., Anh D. Vu, M.D., and Atique Pappa's

(collectively, "Individual Defendants") Motion to Dismiss the matter against them pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 3, 5.)  Plaintiff Patrick J. Fitzsimmons,

M.D. filed responses to the motions, and Defendants replied.  (ECF Nos. 7–10.)  The matter is

ripe for disposition.  The Court dispenses with oral argument because the materials before the

_____

[1] Fed. R. Civ. P. 12(b)(6) allows a party to seek dismissal for "failure to state a claim
upon which relief can be granted."

Court adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[2] and 1367.[3]

For the reasons that follow, the Court will grant in part and deny in part CAF's Motion to Dismiss (ECF No. 3), and denies the Individual Defendants' Motion to Dismiss (ECF No. 5). The Court grants CAF's Motion to Dismiss as to Counts II and III of the Complaint and denies CAF and the Individual Defendants' Motions to Dismiss as to Count IV.

## I.  Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they

---

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff brings Count IV of the Complaint against all defendants under the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h).

[3] The Court exercises supplemental jurisdiction over Fitzsimmons's state law claims of breach of contract, *quantum meruit*, and dividends, distributions, and shareholder rights pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190

3

F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

Fitzsimmons attached the following to his Complaint: (1) a Shareholder Physician Employment Agreement and its corresponding Attachment A (the "Employment Agreement") (Compl. ¶¶ 15–16; *id.* Ex. 1 ("Employment Agreement"), at 1, ECF No. 1-1.); (2) a March 19, 2012 email from Fitzsimmons to Defendant Pappa (*id.* at 28); (3) a March 20, 2012 email from Pappa to Fitzsimmons (*id.* at 29); (4) an April 2, 2012 email from Fitzsimmons to an outside billing consultant (*id.* at 30); and, (5) an April 3, 2012 email from the outside billing consultant to Fitzsimmons (*id.* at 31). The Court will consider the Employment Agreement and the emails because the documents are central to the claims, sufficiently referred to in the Complaint, and neither party contests their authenticity.[4] *See Witthohn*, 164 F. App'x at 396–97 (citations omitted).

## II. Procedural and Factual Background

### A. Summary of Allegations in Fitzsimmons's Complaint[5]

CAF employs physicians to render professional medical services through a practice located in Spotsylvania County, Virginia. To fund its business, CAF receives "substantial sums" through Medicare and Medicaid.[6] (Compl. ¶ 20.)

---

[4] Defendants rely on these documents to buttress their positions. (*See, e.g.*, CAF Mem. Supp. Mot. Dismiss 3, 9, ECF. No. 4 (citing terms of Employment Agreement and separately arguing that emails post-date termination meaning no FCA claim could exist).)

[5] For purposes of the Motion, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Fitzsimmons. *Matkari*, 7 F.3d at 1134.

[6] The United States government operates and funds Medicare. The Commonwealth of Virginia primarily manages Medicaid, but the federal government provides "significant funding" for Medicaid.

On August 1, 2006, CAF's predecessor, Mid-Atlantic Health Alliance, Inc., Cardiology Associates of Fredericksburg Division ("Mid-Atlantic") entered into the Employment Agreement with Fitzsimmons.  Among other provisions, the Employment Agreement makes Fitzsimmons both an employee of and shareholder in Mid-Atlantic.[7]  The Employee Agreement also specifies Fitzsimmons's termination pay, including an entitlement to accounts receivable upon Fitzsimmons's retirement, death, or termination and his "share of the fair market value" of CAF's capital assets.  (Employment Agreement Attach. A ¶¶ 4(a) and (b).)

From August 1, 2006 until April 1, 2012, CAF employed Fitzsimmons as a cardiologist under the terms of the Employment Agreement.  During the time pertinent to the Complaint, Individual Defendants Lewis, Snow, Kauffman, Seidner, and Vu worked as "employee[s], officer[s], director[s], shareholder[s], and/or agent[s] of Defendant CAF."  (Compl. ¶¶ 6–10.)  In 2009, Defendant Pappa became CAF's Practice Administrator.

Shortly after Pappa became Practice Administrator, he held a meeting of the physician shareholders, including Fitzsimmons, during which he "proposed that billings for certain related matters which under Medicare rules are required to be billed with a combined single 'global' price be billed separately so that the total billing would be higher."  (*Id.* ¶ 21.)  Fitzsimmons objected to this "improper billing practice," stating that Medicare rules required such billings to be kept as a "combined single 'global' price."  (*Id.*)  At the meeting, Pappa agreed not to use the separate billing practice.

Despite Pappa's assurances, in March 2012, a CAF billing specialist informed Fitzsimmons that the improper billing practices described above "were systematically being

---

[7] A lack of clarity exists regarding when and how Mid-Atlantic became CAF, but the Complaint sufficiently alleges that the Employment Agreement binds CAF as Mid-Atlantic's successor.

made to Medicare . . . and that this had been going on for a considerable period of time."
(Compl. ¶ 22.) Fitzsimmons brought the improper billing practice to the attention of Pappa and
Defendant Kauffman, then the physician in charge of the relevant practice area. Kauffman took
no action on Fitzsimmons's report. On March 20, 2012, Pappa informed Fitzsimmons that the
improper billing code had been "resolved." (Compl. ¶ 25; *id.* Ex. 3.) Fitzsimmons's further
research indicated the billing issue had not, in fact, been resolved. On April 2, 2012,
Fitzsimmons reached out to an outside billing consultant regarding the code. On April 3, 2012,
the consultant confirmed the improper nature of the code. The consultant also informed
Fitzsimmons of other improper billing practices at CAF, including billing Medicare and
Medicaid under Fitzsimmons's name for services he had not rendered.

On March 31, Fitzsimmons voluntarily withdrew his clinical privileges at one of the two
local hospitals at which he held those privileges. On April 1, 2012, CAF terminated his
employment.[8] Since his termination, Fitzsimmons has not received his share of accounts
receivable or capital assets he argues he should pursuant to the Employment Agreement.
Fitzsimmons also argues that, although he has remained owner of 100 shares of CAF stock, CAF
has failed to provide him with the "dividends, distributions, and other payments paid to
shareholders since his termination and has failed to afford him other rights of shareholders."
(Compl. ¶¶ 44–47.)

### B.   Procedural History

On December 19, 2014, Fitzsimmons filed his Complaint in the Circuit Court for
Spotsylvania County, Virginia. He alleges against CAF: (1) a breach of contract for CAF's

---

[8] Fitzsimmons does not allege that his discharge was retaliatory. Indeed, it appears from
the facts that his termination occurred as the result of his withdrawal of privileges at the local
hospital the day prior, in violation of paragraph 9(a)(a.3) of the Employment Agreement.
(Employment Agreement 4.)

failures to pay him his appropriate share of the accounts receivable and capital assets pursuant to the Employment Agreement; (2) *quantum meruit* for services rendered but not compensated; and, (3) "dividends, distributions, and shareholder rights" for CAF's failure to provide him with such pursuant to his ownership of 100 shares of CAF stock. He asserts a claim against all Defendants for retaliation following his reports of CAF's improper billing practices pursuant to 31 U.S.C. § 3730(h)[9] of the FCA.[10]

On February 6, 2015, Defendants removed the action to this Court. (Not. Removal, ECF No. 1.) On February 13, 2015, CAF and the Individual Defendants filed their Motions to Dismiss. (ECF Nos. 3, 5.) CAF seeks to dismiss Count II (*quantum meruit*) of the Complaint on the grounds that Fitzsimmons failed to sufficiently plead a cause of action pursuant Federal Rule of Civil Procedure 12(b)(6). CAF also seeks to dismiss Count III of the Complaint on the grounds that "dividends, distributions, and shareholder rights" is not a recognized cause of action. Finally, CAF argues for the dismissal of Count IV on the grounds that any alleged retaliatory action took place after Fitzsimmons's termination, and § 3730(h) provides no remedy for post-termination retaliation. Regarding Count IV, the Individual Defendants reiterate CAF's

_____

[9] That statute states, in pertinent part:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

[10] Count IV is the only claim asserted against the Individual Defendants.

arguments regarding post-termination retaliation and additionally assert that § 3730(h) provides no remedy against individuals.

Fitzsimmons filed responses in opposition to the motions, and Defendants filed replies. (ECF Nos. 7–10.)  Accordingly, this matter is ripe for disposition.

### III.  Analysis

**A.    Fitzsimmons Fails to State a Claim for *Quantum Meruit* Because His Allegations Allege Recovery Only Through the Employment Agreement**

Fitzsimmons fails to state a claim against CAF for *quantum meruit* because his factual allegations seek recovery exclusively through the Employment Agreement, and a claim for *quantum meruit* does not lie when an express contract governs the scope of the demand. Fitzsimmons asserts that he may recover under a theory of *quantum meruit* because he "rendered valuable services" to CAF; he has not been "fully and reasonably compensated[;]" he "is entitled to reasonable compensation and has not been paid such, including accounts receivable[;] and[,] it would be unjust and inequitable for him not to be compensated for the reasonable value." (Compl. ¶ 53.)  In order to state a claim for *quantum meruit*[11] under Virginia law,[12] a plaintiff must plausibly allege: "(1) a benefit conferred on the defendant by the plaintiff; (2) the defendant's knowledge that the benefit was conferred; and[,] (3) acceptance or retention of the benefit in circumstances that would make it inequitable for the defendant to keep the benefit

---

[11] Courts use the term *"quantum meruit"* interchangeably with "unjust enrichment." Under Virginia law, unjust enrichment is an implied contract, or quasi-contract, based on equity principles. *See Butts v. Weltman, Weinberg, & Reis Co.*, No. 1:13cv1026, 2013 WL 6039040, at *2 (E.D. Va. Nov. 14, 2013).  The implied contract thrusts an equitable remedy upon a party who accepts and receives goods and services such that the recipient must make reasonable compensation to avoid unjust enrichment. *Id.*

[12] The parties correctly agree that Virginia law controls this matter.  The Court will apply Virginia law to the state law claims in Fitzsimmons's Complaint. *See Butts*, 2013 WL 6039040, at *2 (citation omitted).

8

without paying for it." *Ford v. Torres*, No. 1:08cv1153, 2009 WL 537563, at *3 (E.D. Va.

Mar. 3, 2009) (citing *Centrex Constr. v. Acstar Ins. Co*, 448 F. Supp. 2d 697, 707 (E.D. Va.

2006).

"A condition precedent to the assertion of a [claim for *quantum meruit*] is that no express

contract exists between the parties." *Butts*, 2013 WL 6039040, at *3 (citing *Vollmar v. CSX

Transp., Inc.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989)). "Parties to an express contract are

entitled to have their rights and duties adjudicated exclusively by its terms." *Vollmar*, 705 F.

Supp. at 1176 (quoting *In re Stevenson Assoc.*, 777 F.2d 415, 421 (8th Cir. 1985)). Federal and

Virginia law permit a party to plead the existence of an express contract as an alternative to

recovery through a *quantum meruit* theory. *Mendoza v. Cederquist*, No. 1:09cv163, 2009 WL

1254669, at *3 (E.D. Va. May 6, 2009) (citing *Ford*, 2009 WL 537563, at *4). However, if an

express contract governs the scope of the benefits claimed, then the equitable remedy of *quantum

meruit* will not lie. *Ford*, 2009 WL 537563, at *4.

Here, Fitzsimmons may pursue a theory of *quantum meruit* if the facts plausibly indicate

that the benefits he claims do not rest within the scope of the Employment Agreement.

However, Fitzsimmons has pleaded only facts showing that the relief due to him includes

accounts receivable and capital assets.[13] Such benefits derive exclusively from the Employment

Agreement. Fitzsimmons has failed to plead any facts that plausibly show that the rights he

alleges in the *quantum meruit* claim exist outside the Employment Agreement. Accordingly, he

---

[13] On its face, Fitzsimmons's *quantum meruit* claim alleges only his entitlement to compensation stemming from the Employment Agreement. (*See* Compl. ¶¶ 51–54.) Indeed, Fitzsimmons's response to CAF's Motion to Dismiss indicates that he intended to plead *quantum meruit* as an alternative to his *breach of contract* claim, but not his "dividends, distributions, and shareholder rights" claim. (Resp. CAF Mot. Dismiss 15–16, ECF No. 7.)

has failed to state a claim upon which relief may be granted for *quantum meruit*. The Court grants CAF's Motion to Dismiss Count II of Fitzsimmons's Complaint.

### B.  "Dividends, Distributions, and Shareholder Rights" Does Not State a Cause of Action Because It Does Not Give CAF Fair Notice of a Claim

Fitzsimmons's Count III, "Dividends, Distributions, and Shareholder Rights," does not state cause of action. Fitzsimmons asserts his claim for "dividends, distributions, and shareholder rights" for CAF's failure to provide him with such pursuant to his ownership of 100 shares of CAF stock. (Compl. ¶¶ 8–10.) In his response to CAF's Motion to Dismiss, he cites a number of Virginia statutes touching upon what he contends would be his shareholder rights, but he does not specify under which specific law or laws he proceeds. Fitzsimmons's Complaint stands silent as to any law under which he purports to seek redress. Arguments in Fitzsimmons's **response brief** cannot cure the Complaint's defect, even were they more precise.

Mere assertions of a vague, general wrong do not "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley*, 355 U.S. at 47). Fitzsimmons has stated no claim upon which relief can be granted. Accordingly, the Court grants CAF's Motion to Dismiss Fitzsimmons's Count III.

### C.  Fitzsimmons Has Adequately Pleaded a Cause of Action for Retaliation Under the FCA Because He Has Alleged He Engaged in Protected Activity; Defendants Had Knowledge of His Activities; and, Defendants Took Retaliatory Actions as a Result of His Activities

Fitzsimmons has adequately pleaded a claim for retaliation under § 3730(h) of the FCA because he has alleged that: (1) he engaged in protected activity; (2) defendants had knowledge of his protected activities; and, (3) defendants took retaliatory actions as a result of his protected activities. Congress designed the FCA to "'discourage fraud against the federal government.'"

*Huang v. Rector and Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524, 547 (W.D. Va. 2012) (citing *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 342 (4th Cir. 2010)). The FCA's anti-retaliation statute in § 3730(h) shields a whistleblower who may be considering exposing fraud by affording protection from retaliatory acts when he or she investigates or pursues action under the statute. *Id.* at 547–48 (citing *Mann*, 630 F.3d at 343; 31 U.S.C. § 3730(h)(1)). The anti-retaliation provision allows employees, contractors, or agents of an employer to receive relief if such person is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for lawful acts done by that person or an associated person in furtherance of an action under the FCA. 31 U.S.C. § 3730(h)(1). Fitzsimmons alleges entitlement to FCA relief because, after he complained about improper billing practices, his employers CAF and the Individual Defendants discriminated against him by refusing to provide him with the appropriate share of CAF's accounts receivable and capital assets pursuant to the Employment Agreement.

To plead the elements[14] of an action under § 3730(h), an employee must allege sufficient facts that: (1) he or she engaged in protected activity; (2) his or her employer knew of these acts; and (3) discrimination occurred against him or her as a result of the acts. *Mann v. Heckler & Koch Defense, Inc.*, No. 1:08cv711, 2008 WL 4551104, at *4 (E.D. Va. Oct. 7, 2008), *aff'd*, 630 F.3d 338 (4th Cir. 2010) (quoting *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997)).

First, Fitzsimmons has adequately alleged that he engaged in protected activity. Protected activity includes acts in furtherance of a claim filed *or to be filed* under the FCA.

---

[14] Defendants make no real effort to argue that Fitzsimmons does not plead the elements of a claim under § 3730(h), instead relying on arguments more appropriately made on summary judgment, *infra*. Nevertheless, the Court briefly outlines such elements to ensure Fitzsimmons has properly pled a cause of action.

11

*Huang*, 896 F. Supp. at 548 (quoting § 3730(h)).  Thus, § 3730(h) protects "employees while they are collecting information about a possible fraud, before they have put all the pieces of the puzzle together." *Id.* (quoting *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998)).  Fitzsimmons contends that he objected, more than once within CAF, and outside of it, to improper Medicare billing practices utilized at CAF.  Such activities more than plausibly suggest protected activity because they voiced concerns "in furtherance" of an action alleging Medicare fraud against the federal government.

Second, Fitzsimmons has adequately pleaded that CAF and the Individual Defendants knew of his protected activities.  He states that he objected to the improper billing at a meeting of all the physician shareholders and personally informed Individual Defendants Pappa and Kauffman of the unlawful practices.  Fitzsimmons attaches what purports to be an email from Pappa noting Fitzsimmons's billing concerns and stating they had been resolved.  At the motion to dismiss stage, Fitzsimmons has pleaded sufficient facts, together with reasonable inferences drawn therefrom, to plausibly demonstrate that CAF and the Individual Defendants knew that he had engaged in objections to and reports of improper billing.  Accordingly, he has adequately pleaded Defendants' knowledge of his protected activities.

Finally, Fitzsimmons sufficiently alleges discrimination as a result of his protected activities.  He alleges that CAF and the Individual Defendants refused to compensate him with his share of the accounts receivable or capital assets as a result of his protected activities.  Accordingly, because Fitzsimmons has alleged sufficient facts to meet each element of an anti-retaliation claim, the Court finds that he has adequately pleaded a cause of action for retaliation under § 3730(h).

1. **Summary Judgment Provides a More Appropriate Stage to Consider CAF's Argument Regarding Post-Termination Retaliation**

Defendants focus their arguments not on the elements of a § 3730(h) claim but on whether the statute allows relief for any retaliation following a plaintiff's termination. It appears true that Fitzsimmons's alleged discrimination—what he claims are improperly withheld payments due under the termination provisions of his Employment Agreement—took place *after* he left CAF. No appellate court, including the United States Court of Appeals for the Fourth Circuit, has addressed whether § 3730(h) permits a claim for post-termination retaliation.

Some split exists among the district courts that have addressed the question of whether § 3730(h) provides a remedy for post-termination retaliation. The vast majority of courts to have considered the issue have found, most even at the motion to dismiss stage, that § 3730(h) provides no remedy for retaliation alleged to have occurred following a plaintiff's termination of employment.[15] Two courts, a distinct minority, have found that § 3730(h) may contemplate a

---

[15] *See Elkharwily, M.D. v. Mayo Holding Co.*, No. 12-3062 (DSD/JJK), 2015 WL 468400, at *8 n.7 (D. Minn. Feb. 5, 2015) (noting on summary judgment that, were plaintiff to claim any post-termination retaliation, his claims would fail because § 3730(h) did not contemplate relief for such conduct); *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 306 (S.D.N.Y. 2014) (granting Rule 12(b)(6) motion to dismiss § 3730(h) as to all claims but one for lack of timeliness, while noting in dicta that § 3730(h) would preclude the single timely, but improperly alleged, action because § 3730(h) did not provide a remedy for post-termination retaliation); *Bechtel v. Joseph Med. Ctr.*, No. MJG-10-3381, 2012 WL 1476079, at *9–10 (D. Md. Apr. 26, 2012) (granting nurse's Rule 12(b)(6) motion to dismiss § 3730(h) claims for post-termination retaliation by interfering with medical education and hospital privileges because the statute's language "is not reasonably interpreted to include post-termination retaliatory actions"); *Master v. LHC Group, Inc.*, No. 07-1117, 2013 WL 786357, at *6–7 (W.D. La. Mar. 1, 2013 (granting Rule 12(b)(6) motion to dismiss § 3730(h) claim for post-termination retaliation of threatening to file state court suit because § 3730(h) statute protects individuals in the terms and conditions of employment, which "necessarily required that the retaliatory action occur during the period of employment"); *Poffinbarger v. Priority Health*, No. 1:11cv993, 2011 WL 6180464, at *1 (W.D. Mich. Dec. 13, 2011) (same); *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 207–08 (D.D.C. 2011) (same); *United States ex rel. Davis v. Lockheed Martin Corp.*, No. 4:09cv645Y, 2010 WL 4607411, at *8 (N.D. Tex. Nov. 15, 2010) (holding that Davis did not put employers on notice of an FCA claim and stating in dicta that § 3730(h) does not cover post-

remedy for post-termination retaliation.[16]  In so ruling, these two courts base their conclusions on § 3730(h)'s statutory language as well as guidance from opinions construing similar anti-retaliation statutes.[17]

However, none **of the majority or minority cases** directly align with the facts before this Court.  Here, Fitzsimmons claims improper reimbursement for money owed, post-termination, under the terms of the Employment Agreement.  The Employment Agreement set the "terms and conditions," 31 U.S.C. § 3730(h), of Fitzsimmons's employment.  These terms specifically contemplated payment of monies after termination.  The Employment Agreement makes plain that this compensation would not occur while Fitzsimmons was an employee.  For example, as to accounts receivable and capital assets, the Employment Agreement states:

> 4. Termination Pay Provision 9.c-
> a.        In the event of . . . termination of employment, Employer shall pay to Employee their individual productivity share amount of the accounts receivable ("A/R"). . . . For a period of twelve (12) months from the date of . . . termination of employment, the A/R will be collected and paid once a month when the month's final financial statements and reports become available. . . .
> b.        In addition to the buy-out of the A/R, Employee . . . will receive his [or her] share of the fair market value of the Employer's capital assets, as

---

employment conduct); *Lehoux v. Pratt & Whitney*, No. 05-210-P-S, 2006 WL 346399, at *2 (D. Me. Feb. 8, 2006) (interpreting pre-2009 version of § 3730(h) to require dismissal for post-termination retaliatory conduct), *adopted*, 2006 WL 616057 (D. Me. Mar. 9, 2009); *United States ex rel. Wright v. Cleo Wallace Ctrs.*, 132 F. Supp. 2d 913, 928 (D. Colo. 2000) (same).

[16] *See Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 419–20 (D. Md. 2011); *Haka v. Lincoln Cnty*, 533 F. Supp. 2d 895, 917 (W.D. Wisc. 2008).  Both these courts determined the issue on summary judgment, not on a motion to dismiss.  The Court notes that two district courts in Maryland, within the Fourth Circuit, have taken differing approaches on the post-employment retaliation issue.  *Compare Bechtel*, 2012 WL 786357, at *9–10, *with Glynn*, 807 F. Supp. 2d at 419–20.

[17] In the Fair Labor Standards Act context, 29 U.S.C. § 207, the Court of Appeals for the Fourth Circuit has encouraged courts to utilize the guidance of analogous Title VII statutes.  *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008).  The Supreme Court of the United States has held that Title VII's anti-retaliation provision contemplates recovery for post-termination retaliatory acts.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

14

determined by the Employer's accountant. These capital assets . . . shall be paid out over a similar time frame as the A/R . . . .

(Employment Agreement Attach. A, at 1–2.)

The Court will not, at this early pleading stage, find that the anti-retaliation provision of the FCA cannot cover Fitzsimmons's claims for post-termination payments he says would be required by the Employment Agreement that set the "terms and conditions" of his employment.[18] *See* 31 U.S.C. § 3730(h). Fitzsimmons has pleaded sufficient facts to plausibly meet each element of a § 3730(h) claim. Accordingly, summary judgment would provide a more suitable means to evaluate whether the FCA contemplates recovery for Fitzsimmons's post-termination retaliation. CAF's Motion to Dismiss Count IV will be DENIED.

### 2. Summary Judgment Provides a More Appropriate Stage to Consider the Individual Defendants' Argument Regarding Individual Liability

The Individual Defendants contend that § 3730(h) does not permit individual liability.[19] In 2009, Congress amended § 3730(h) and removed an arguably key phrase regarding potential defendants that required discrimination "by [an employee's] employer." *See Rangarajan v. Johns Hopkins Health Sys. Corp.*, No. WMN-12-1953, 2014 WL 6666308, at *4 (D. Md. Nov. 21, 2014). District courts appear divided as to the interpretation of the import of the 2009 amendment, and no court of appeals has considered the matter. *See, e.g., id.* (citing cases).

Noting that the plain language of the amended § 3730(h) does not limit defendants to employers, some district courts have issued well-reasoned opinions finding that the 2009 amendment extends liability under § 3730(h) to individual defendants. *See, e.g., Huang*, 896 F.

---

[18] The lack of binding precedent from the Fourth Circuit, and even the minor disagreement among district courts, further suggests a ruling at this stage would be premature.

[19] For the reasons stated above, the Court denies the aspect of the Individual Defendants' Motion to Dismiss based on a claim that § 3730(h) does not apply to post-employment retaliation.

15

Supp. 2d at 548 n.16; *United States ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09cv1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012). Other courts, in similarly well-thought out decisions, turn to legislative history indicating that Congress intended to expand the class of potential *plaintiffs* to include non-employees such as contractors, and have ruled that no individual liability exists. Essentially, these courts suggest that, because Congress remained silent as to the intended effect on the class of *defendants*, Congress meant to keep the status quo, meaning courts should continue to find that individual liability does not exist despite the change in statutory language. *See, e.g., Rangarajan*, 2014 WL 6666308, at *4–6; *United States ex rel. Fryberger v. Kiewit Pac. Co.*, No. 12cv02698, 2014 WL 1997151, at *11–13 (N.D. Cal. May 14, 2014).

In the absence of binding precedent from the Fourth Circuit, given that courts within the Fourth Circuit disagree, and in the absence of a specific statutory analysis offered by either side, this Court finds that summary judgment will provide the most appropriate stage to evaluate this argument. The Individual Defendants Motion to Dismiss Count IV will be DENIED.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part CAF's Motion to Dismiss and denies the Individual Defendants' Motion to Dismiss (ECF Nos. 3, 5). The Court grants CAF's Motion to Dismiss Counts II and III of Fitzsimmons's Complaint and denies CAF and the Individual Defendants' Motions to Dismiss Count IV.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 8-18-15
Richmond, Virginia

16